STATE *vs.* ANNIE E. TILGHMAN,

*Criminal Law—Murder—Manslaughter—Malice—Deadly Weapon—Self Defense—Circumstantial Evidence—Confessions— Reasonable Doubt.*

1.   Murder of first and second degree, and manslaughter defined.

2.   Malice defined, and also the effect of killing by a deadly weapon.

3.   If the jury are satisfied from the evidence that the deceased first attacked the prisoner, and that from the character of such attack she had reasonable cause to believe, and did believe, that she was in imminent danger of death or great bodily harm, and that she had no reasonable means of avoiding or preventing her death or great bodily harm, other than by killing her assailant, and that under such circumstances she shot and killed him, it was a justifiable act of self defense, and she should be acquitted of any crime whatever.

4.   Where the evidence relied upon to prove the guilt of the accused is circumstantial, it is essential, *first*, that such circumstances be proved to the satisfaction of the jury beyond a reasonable doubt; *second*, that such circumstances be in all respects consistent with the theory of guilt, and *third*, that such circumstances be inconsistent with any other reasonable theory than the guilt of the accused.

5.   The rules governing confessions, stated.

(*April* 27, 1906.)

LORE, C. J., and SPRUANCE and BOYCE, J. J., sitting.

*Robert H. Richards*, Attorney-General, and *Daniel O. Hastings*, Deputy-Attorney General, for the State.

*Alexander M. Daly* for the defendant.

At a Court of Oyer and Terminer in and for Kent County, beginning April 26, 1906, the prisoner, a young colored woman, was placed upon trial for the murder of her husband, one James E. Tilghman, at their home near Frederica in Milford Hundred on the night of November 11, 1905.

The following written statement, dated November 14, 1905, signed by the defendant, Annie E. Tilghman, was offered in evidence by the State and admitted over the objection of counsel for defendant:

"My husband and me was in Frederica on Saturday night Nov. 11th, 1905. We started home in a wagon with Mr. Thomas

Morris, John Riley, Edward Burton, Wilbur Carter, Mamie Eitzjarrell, Enoch Tilghman and Martha Tilghman.

"Wilbur Carter, Mamie Fitzjarrell, Jim and me all got out of the wagon on yon side of the colored church. Wilbur Carter was kind of drunk. Jim run and caught up to the wagon and rode home. We all walked on home. I walked fast, they walked slow and I got home first. I went in my house; the light was burning, setting on the mantle. I looked around for Jim and could not find him so I come over here (meaning to Enoch Tilghman's house). I thought he was over here and asked Mr. Enoch and Miss Martha if Jim was over here. They said 'no, ain't he over home? He aint been long gone.' I went back to the wagon shed. I met Mamie Fitzjarrell and Walter Carter. I asked them if they had seen anything of Jim. They said no, they had seen nothing of him. I then come on back to the house, went in and pulled the bed out of the stairway and I heard something stomping around on the steps so I goes up there and he was up there with his feet down on the steps. I called him first. I said 'Jim aint this you?' He didn't say nothing. I called him again and said 'Jim aint this you?' He said 'yes.' I said 'What you doing up here.' He said to me 'what in the hell is it to you?' I said 'if I was you I would come down.' I said 'this is the way you been doing all the time.' So he gets up and starts down right behind me. I said 'if this is the way you are going to be doing all the time I going to leave,' so I grabbed my hat off of the table and started out of the door. He grabbed the gun. He was standing on the third step from the bottom of the stairs. He pulled back the trigger. The gun said click. He pointed the gun at me. I had picked up my hat and started out of the door. I shoved the gun and the barrel of the gun went up this way (showing) and the gun fired and he said 'Oh Lord.' I run out right away over here as soon as the gun fired and the light went out. I did not hear the gun fall. I could not see; it was dark. There was no one in the house but Jim and me when he was shot."

The State adduced no evidence to directly contradict the above statement, but proved by Enoch Tilghman, the father

of the deceased, that shortly after the arrival of James E. Tilgh-
man at his home on the night of his death, Annie E. Tilghman,
the defendant, called and inquired for Jim, meaning her husband,
the deceased, and was told that he was at his home which was
only about forty feet from the home of Enoch Tilghman; that
Annie E. Tilghman thereupon left, and in a few minutes a shot
was heard, and within fifteen or twenty minutes thereafter
Annie E. Tilghman, the defendant, came to Enoch Tilghman's
house and said "Jim is dead, Jim is dead." That thereupon
Enoch Tilghman and some others who were in the house went
over to James E. Tilghman's house and, after lighting the lamp,
found him lying dead with his head and part of his body resting
upon a winding stairway in a corner of the room and his feet rest-
ing upon the floor; that a hole was shot almost straight through
the top of his head and part of the head shot away and brains and
blood were scattered back of him up the stairway and against the
wall thereof; that the gun with which Annie E. Tilghman alleged
in her statement the shooting was done, was sitting under a
mantel several feet away from where the deceased lay; that
Annie E. Tilghman at first refused to state how the shooting
was done but later made a statement as to the matter similar
to the written statement above, and was asked by Enoch Tilgh-
man how Jim could shoot himself and then place the gun under
the mantel, to which she made no reply. There was further
evidence to the effect that the Tilghmans occupied the first
floor of the house where the killing occurred and used the stair-
way in question as a place in which to store their mattress or
bed, and that on the night in question a young colored woman,
who was not living with her husband, was sleeping on the floor
above the room in which the Tilghmans lived and to which
room said stairway led.

The defendant, when placed upon the stand testified con-
cerning the shooting substantially as detailed in the above
written statement made by her, and explained on cross exami-
nation that when she said to her husband "This is the way you
been doing all the time," and "If this is the way you are going

to be doing all the time I going to leave," she meant his conduct in getting drunk, and stated that he was drunk on the night in question.

SPRUANCE, J., sharging the jury:

Gentlemen of the jury;—The prisoner, Annie E. Tilghman, is indicted for the murder of James E. Tilghman.

Homicide is the killing of one human being by another. Felonious homicide, under our law, is of three kinds: murder of the first degree, murder of the second degree and manslaughter.

Malice is an essential ingredient of the crime of murder of both degrees. Without malice there can be no murder either of the first or of the second degree. Malice is a condition of the mind or heart. As here used, this term is not restricted to spite or malevolence towards the particular person slain, but also includes that general malignity and reckless disregard of human life which proceed from a heart devoid of a just sense of social duty and fatally bent on mischief. Wherever the fatal act is done deliberately or without adequate cause, the law presumes that it was done with malice, and the burden is on the prisoner to show from the evidence, or by inference from the circumstances of the case, that the act was not done with malice.

Murder of the first degree is where the killing is done with express malice aforethought, or in perpetrating or attempting to perpetrate a crime punishable with death. Express malice aforethought is where one person kills another with a sedate, deliberate mind and formed design, which formed design may be manifested in many ways. As for instance, by lying in wait for the deceased, or by antecedent menaces or threats that disclose a purpose on the part of the prisoner to commit the act charged, or by former grudges, ill-will, spite, hatred or malevolence towards the deceased, or any other circumstances which disclose the purpose or intent of the accused towards her victim at the time when the crime was committed. The deliberate selection and use of a deadly weapon is a circumstance which, in the absence of satisfactory evidence to the contrary, indicates the existence in the mind of the person committing the act of a deliberate formed design to kill. All homicides with a

deadly weapon are presumed to be malicious until the contrary appears from the evidence, and the burden of proof to the contrary lies on the accused.

Where the killing by a deadly weapon is admitted or proved, malice aforethought is presumed, in the absence of evidence to the contrary, and the burden of showing the contrary is on the accused, as the natural and probable consequences of the act are presumed by law to have been intended by the person using a deadly weapon. If the jury are satisfied from the evidence that the prisoner when she killed the deceased deliberately intended so to do, the length of time that said intention existed is immaterial, and the killing under such circumstances would be murder.

Murder in the second degree is where the killing was done with implied malice. Implied malice is an inference or conclusion of law from the facts found by the jury. Murder of the second degree is where there was no deliberate mind or formed design to take life, or perpetrate a crime punishable with death, but where the killing was done without justification or excuse, or without provocation or without sufficient provocation to reduce it to manslaughter.

Manslaughter is where one person unlawfully kills another without malice.

In order to reduce the crime to manslaughter, the provocation must be very great; so great as to produce such a transport of passion as renders the person for the time deaf to the voice of reason. While murder proceeds from a wicked and depraved spirit and is coupled with malice, manslaughter results from no malignity, but from unpremeditated and unreflecting passion.

Before attempting to classify the offense with which this prisoner is charged, you should determine whether the evidence before you is sufficient to prove beyond a reasonable doubt that the prisoner committed the act of which she is accused. The indictment charges, in substance, that the prisoner on the night of the eleventh day of November last shot and killed her husband James E. Tilghman. The prisoner admits that she and her hus-

band were the only persons present when he was killed, but she denies that she killed him, and insists that the evidence before you is not sufficient to prove that she did it.

In this, as in every other stage of your inquiry, you should bear in mind that the law presumes the prisoner to be innocent until she is proved to be guilty.

In civil cases the rule is that the verdict should be in favor of the person for whom is the preponderance or greater weight of the evidence; but this is not the rule in criminal cases. In criminal cases the law requires that the accused should not be convicted unless the jury are satisfied from the evidence beyond a reasonable doubt that he or she is guilty.

If upon mature consideration of the evidence you should not be able to determine how the fatal shot was fired, or by whom it was fired, or if you should not be satisfied from the evidence beyond a reasonable doubt that the shot was fired by the prisoner, you should acquit her. If you should find from the evidence that Tilghman, with a gun in his hands, made an assault upon the prisoner, or was about to do so, and that she, without intending to injure him, attempted to disarm him or attempted to prevent him from injuring her, and in the struggle the gun was accidentally discharged and killed Tilghman, you should acquit the prisoner. And if the jury are satisfied from the evidence that the deceased first attacked the prisoner and that from the character of such attack she had reasonable cause to believe, and did believe, that she was in imminent danger of death or great bodily harm, and that she had no reasonable means of avoiding or preventing her death or great bodily harm, other than by killing her assailant, and that under such circumstances she shot and killed him, it was a justifiable act of self-defense and she should be acquitted of any crime whatever.

Where the evidence relied upon to prove the guilt of the accused is circumstantial, it is essential, *first*, that such circumstances be proved to the satisfaction of the jury beyond a reasonable doubt; *second*, that such circumstances be in all respects consistent with the theory of the guilt of the accused,

and, third, that such circumstances be inconsistent with any other reasonable theory than the guilt of the accused. In other words, there should not be a conviction upon circumstantial evidence unless such evidence be sufficient to exclude any reasonable inference or conclusion other than that the accused is guilty of the crime charged.

Neither the written or oral statements or evidence before you made by the prisoner as to this tragedy can properly be called confessions, as in all of them she denies any guilt whatever. But the rules governing confessions are applicable to such statements. A free and voluntary confession is generally deserving of the highest credit, because it is against the interest of the person making it and is presumed to flow from a sense of guilt. The whole of what the prisoner said upon the subject at the time of making the statement or confession should be taken together and considered by the jury, but all parts of a confession, whether for or against the prisoner, are not necessarily entitled to equal credit. The prosecution is at liberty to deny or contradict any part of such statement or confession. In determining the credit to be given to such statement or confession the jury may reject as not entitled to belief such parts of it as are contrary to other parts of it, or in conflict with the facts which are proved to the satisfaction of the jury. The jury may believe that part of the statement or confession which charges the prisoner and reject that which is in her favor, if under all the circumstances of the case they find sufficient ground for so doing. The duty of the jury with respect to statements or confessions of the prisoner and in respect to her own testimony and the testimony of other witnesses is precisely the same. The jury should believe so much of such confession or statement and testimony as they deem true or worthy of belief and reject so much of the same as they deem false or unworthy of belief.

In criminal cases the accused is presumed to be innocent until his guilt is proved to the satisfaction of the jury beyond a reasonable doubt; and if after carefully and conscientiously considering and weighing all the evidence in this case you should entertain a reasonable doubt of the guilt of the prisoner, that

doubt must inure to her benefit and your verdict should be not guilty. But such a doubt does not mean a mere fanciful, vague, or speculative doubt, but a reasonable, substantial doubt remaining in your minds after a careful consideration of all the evidence, and such a doubt as a reasonable, fair-minded and conscientious man would entertain under all the facts and circumstances of the case.

Under this indictment, if the evidence shall so warrant, you may find the prisoner guilty in manner and form as she stands indicted, that is, guilty of murder in the first degree; or, guilty of murder in the second degree, or guilty of manslaughter, or not guilty.

Verdict: Guilty of murder in the second degree.